ESTATE OF HYMAN KLEINMAN, DECEASED, MORRIS A. KLEINMAN AND REUBEN KLEINMAN, CO-EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56547.   Filed March 15, 1956.

*A. Robert Doll, Esq.,* and *Charles Speed Gray, Esq.,* for the petitioners.

*Elmer E. Lyon, Esq.,* for the respondent.

**OPINION.**

HARRON, *Judge:* The decedent, by the terms of his will, bequeathed to his widow a life interest in some of the assets of his estate, except for his bequest of household furnishings having a value of $369. The bequest of such tangible personal property is an interest in property which passed from the decedent to his widow. The Commissioner has determined that the petitioners are entitled to a marital deduction in the amount of $369, only, under the provisions of section 812 (e) of the 1939 Code.

The petitioners point out that the decedent's widow had the option, under Kentucky law, of (1) taking the bequests of her deceased husband under his will by refraining from electing to take against his will, or (2) taking her dower interests as allowed by law by the act of a formal renunciation. They argue that even though there was no

formal renunciation of the decedent's will by Rose, which would have required liquidation of the furrier business partnership in which two sons of the decedent were the sole partners by virtue of the decedent's bequest to them of his 88 per cent interest therein, she, in effect, elected to take the dower interests to which she was entitled under Kentucky law, and she then sold such interests to the co-executors of her husband's estate, for the consideration specified in the agreement of January 19, 1951.

Under the above contention, the petitioners claim a marital deduction in the amount of $24,128.07, which is the value of one-half of the decedent's surplus personal property.[1] Under Kentucky law, section 392.020 of the Kentucky Revised Statutes, Rose's fee simple dower interest would include [2] one-half of her husband's surplus personal property.

If this Court should fail to find that the decedent's widow elected to take her dower interests within the meaning of section 812 (e) (3) (C), then the petitioners contend, in the alternative, that the widow relinquished her claim to dower allowed her by Kentucky law, and in settlement therefor received property interests by accepting the consideration specified in the agreement of January 19, 1951, namely, $50 per week for life, plus the right to continue to live in her home, plus payment by the estate of taxes, repairs, insurance, and all of the expenses of maintaining the property in which her home was located.

Under the alternative contention, the petitioners claim a marital deduction in the total amount of $29,150.43.[3]

The petitioners' argument under their alternative contention is that under the agreement of January 19, 1951, Rose received property interests from her deceased husband, by inheritance, which come within

---

[1] This value is computed as follows:

| | |
|---|---:|
| Tangible personal property | $369.00 |
| Intangible personal property | 56,067.39 |
| Total | $56,436.39 |
| Less costs of administration, expenses, and debts of the estate | 8,180.25 |
| Surplus personal property | $48,256.14 |
| Widow's one-half share | 24,128.07 |

[2] The petitioners originally claimed a marital deduction in the amount of $27,541.17, which represents the total of one-half of the value of the decedent's surplus personal property and the present value of a life estate in one-third of the decedent's real estate. However, petitioners now recognize that the widow's life estate in the decedent's real estate does not qualify for the marital deduction under section 812 (e) because it constitutes a nonqualifying terminable interest under section 812 (e) (1) (B). Accordingly, petitioners under their first contention, now claim a marital deduction of only $24,128.07.

[3] This amount is the total of the following:

| | | |
|---|---|---:|
| (1) | The value of household furnishings | $369.00 |
| (2) | The present value on December 1, 1950, of $50 per week for life | 20,743.14 |
| (3) | The present value on December 1, 1950, of the right to have paid for life by the estate, insurance, taxes, and expenses of the home property | 8,038.29 |
| | | $29,150.43 |

the provisions of section 812 (e) to the extent that such interests do not constitute terminable interests with remainders over within the meaning of the statute.

The authority which the petitioners cite as giving support to their claims is *Estate of Gertrude P. Barrett*, 22 T. C. 606.

The respondent contends that Rose did not in fact or in law renounce the will of her deceased husband, and that she did not elect to take her dower interests under Kentucky law. He argues further that any theory that the dower interest which Rose could have taken under local law passed to her and was used by her to purchase the interests under the will and the testamentary trust, as set forth in the agreement of January 19, 1951, is contrary to the express intention of the Congress with respect to the application of section 812 (e). He contends also that the interests which Rose received under the agreement of January 19, 1951, are terminable interests, the value of which cannot be deducted because of the specific exclusion from the marital deduction which is set forth in section 812 (e) (1) (B).

The applicable provisions of section 812 (e) of the 1939 Code are set forth in the margin.[4]

---

[4] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under clauses (i) and (ii))—

(iii) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For the purposes of this subparagraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

\* \* \* \* \* \* \*

(3) DEFINITION.—For the purposes of this subsection an interest in property shall be considered as passing from the decedent to any person if and only if—

(A) such interest is bequeathed or devised to such person by the decedent ; or

(B) such interest is inherited by such person from the decedent ; or

(C) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent ; or

(D) such interest has been transferred to such person by the decedent at any time ; or

The arguments and contentions of the petitioners have been carefully considered. One question which must be decided is whether under all the facts the widow, Rose, received nothing more than a terminable interest for which no marital deduction is allowable under the provisions of section 812 (e) (1) (B). In order to consider this question without being led into complicated considerations which may or may not be relevant and material, it is necessary to review the facts objectively. The facts, as we conclude from all of the evidence, are as follows: Under his will, the decedent bequeathed to his wife, in addition to household furnishings, only a life estate in two pieces of real property, and a contingent interest in the income of the testamentary trust created by his will, or in the principal thereof, which depended upon the absolute discretion of the trustees. The life estate in the two pieces of improved real estate was clearly a terminable interest which would pass to others upon the death of the surviving spouse. Under the decedent's will, upon the death of Rose, the remainder interest in the two pieces of real estate which were involved in the testamentary bequest, fall into the residuary estate which constitutes the corpus of the testamentary trust. The bequest of the decedent of a life estate in two pieces of real property would have provided the surviving spouse, Rose, with a weekly income of from $15 to $25 a week. The decedent, in his will, provided for the contingency that his widow might require some supplementation of the income which she would receive under her life estate in the two pieces of real estate. That is to say, the widow was named as a beneficiary of the testamentary trust, but the trustees were given absolute and wide discretion in the matter of when they would make payments of income or principal from the testamentary trust, and the amounts of any such payments. There were at least 9 other named beneficiaries of the testamentary trust. The death of Rose, one of 10 or more possible beneficiaries of the trust would, of course, increase the amount of income or principal which would be available to surviving trust beneficiaries. Rose had no power of appointment over any of the corpus of the testamentary trust.

Other facts of which we take note are as follows: When Rose expressed her dissatisfaction with her deceased husband's testamentary bequest, her attorney and the co-executors realized that if Rose should elect to renounce the will and take her dower interests as though there were intestacy, it would be necessary to liquidate the partnership which carried on a business which had become the business of two of the decedent's sons by virtue of the decedent's bequest to them of his 88 per cent interest in the partnership. Such liquidation of the partnership business was undesirable. Rose did not formally renounce the will and no formal steps were taken whereby she could be

awarded a widow's dower interest in the property of the decedent. Rose, her attorney, and the co-executors of the decedent's will made an arrangement which is fully set forth in the agreement which was executed on January 19, 1951, in which Rose stated that she entered into the agreement *instead of renouncing the will of her deceased husband.* She agreed to accept the binding promises of her stepsons, Morris and Reuben, as executors of the will, and as trustees under it, that she would receive the net amount of $50 a week for life, free and clear of all expenses of maintaining the property where she would live. It was agreed that if the income from the estate was not enough to provide her with $50 per week and to pay all taxes, insurance, and expenses of maintaining her home, then the co-executors and co-trustees would use such part of the principal of the estate as might be necessary. This agreement was made under the provisions of the decedent's will.

We are unable to place upon all of the evidence before us, the construction for which the petitioners contend under their chief argument and under their alternative argument. The point that Rose could have elected to renounce the decedent's will and elect to take her dower interests is immaterial in view of what was done, namely, entering into the agreement of January 19, 1951. In view of the very broad discretion of the trustees of the testamentary trust, the agreement of January 19, 1951, is clearly an agreement to make certain, in advance, that the trustees would pay income or principal from the testamentary trust to Rose who was one of the named beneficiaries of the testamentary trust. In other words, Morris and Reuben Kleinman, as co-executors and co-trustees under the decedent's will, agreed that Rose would be guaranteed a weekly income of $50. Under the decedent's will, Rose's weekly income would come from the property in which Rose was given a life estate and from the income of the testamentary trust. At the time of the decedent's death, he owned three pieces of real estate which are rental properties, two of which were located on North Mount Holly Avenue. The decedent, in his will, had not given Rose any interests in the rental property which was located at 223 North Mount Holly Avenue. It may be that the decedent did not own this piece of property at the time he made his will. In effect, the agreement of January 19, 1951, assured Rose that the trustees of the testamentary trust would supplement out of trust income or principal, the income from the life interest which was bequeathed to her in the property located at 201 North Mount Holly Avenue and 2041 Brownsboro Road. They could do this from income of 223 North Mount Holly Avenue. Of course, the trustees had discretion under the decedent's will to accomplish exactly what is provided for in the agreement of January 19, 1951, under the powers given them as trustees of the

testamentary trust. The agreement which was executed in 1951 simply constituted an undertaking on the part of the trustees that they would exercise their discretion so as to provide Rose with income in the amount of $50 per week, thereby eliminating the uncertainty which existed because of their discretion under the provisions in the will relating to the testamentary trust.

In the light of the above analysis of all of the facts, it is concluded that Rose did not renounce the will of her husband; she did not, in substance, elect to take her dower interests in her deceased husband's property as if there had been intestacy, and she received under the agreement of January 19, 1951, a commitment on the part of the executors and trustees that they would exercise their discretion under the decedent's will to make payment of trust income or principal so as to give Rose a weekly income in the agreed amount of $50. In view of the provisions of the testamentary trust and of the bequests of a life interest in two pieces of real estate, we cannot conclude that the agreement of January 19, 1951, constituted a settlement by the executors and trustees in payment for a relinquishment by Rose of her dower interests. The 1951 agreement only made certain the exercise by the trustees of their discretion to pay income, or principal, to Rose. Such payment was permissible under the terms of the decedent's will. It was clearly the intention of the decedent that his surviving widow should receive income from the testamentary trust as well as from the life estate which was given in two pieces of real estate. The agreement of January 19, 1951, was approved by the Probate Court having jurisdiction over the will of the decedent. In our opinion the agreement did no more than carry out provisions of the will.

It follows from the facts and conclusions set forth above that all which Rose received by entering into the agreement was provided by the decedent's will, the executors and trustees agreeing to exercise their discretion in Rose's favor. We must, therefore, reject both theories of the petitioners.

In this posture of the issue, the question is whether Rose received under the decedent's will terminable interests which are excluded from the marital deduction under section 812 (e) (1) (B), except for the bequest of the personal property consisting of household furnishings. Another way of stating the question is whether the decedent's provisions for Rose in his will, which are carried out in the agreement, qualify for the marital deduction under section 812 (e) (1) (F).

The plain language of the applicable provisions of the statute leaves no room for doubt. The provisions of the decedent's will gave Rose only a terminable interest under section 812 (e) (1) (B) for which the marital deduction is not allowable. We are unable to find that the agreement of January 19, 1951, brought about a passing of "property" from the decedent to his widow which qualifies for the marital

deduction as an "interest in property" such as a dower interest, or as an interest which comes under section 812 (e) (1) (F). Cf. *Estate of Louis B. Hoffenberg*, 22 T. C. 1185, aff'd. 223 F. 2d 470; *Estate of Arthur Sweet*, 24 T. C. 488; *Estate of Joseph E. Reilly*, 25 T. C. 366; and Report of the Senate Finance Committee, S. Rept. No. 1013, 80th Cong., 2d Sess., reprinted in 1948–1 C. B. 335–337.

In *Estate of Michael Melamid*, 22 T. C. 966, the facts are similar to the facts of this proceeding. We held that the interest passing to the surviving spouse was a terminable interest within the meaning of section 812 (e) (1) (B). See also *Estate of Edward F. Pipe*, 23 T. C. 99; and *Estate of Harrison P. Shedd*, 23 T. C. 41.

Consideration has been given to *Estate of Gertrude P. Barrett, supra*. The facts distinguish that case from this one.

We agree with the respondent that the contentions of the petitioners are contrary to the intention of Congress. This is demonstrated by the following statement in the Report of the Senate Finance Committee, S. Rept. No. 1013, 80th Cong., 2d Sess., reprinted in 1948–1 C. B. 285, 338, 339:

If the decedent by his will bequeaths a terminable interest for which a deduction is not allowed and the surviving spouse takes in accordance with the will, the marital deduction is not allowed even though under the local law the interest which such spouse could have taken against the will was. a fee interest for which a deduction would be allowed. *Any theory that the interest which she could have taken under the local law did pass to her in such cases and was used by her to purchase the interest under the will is contrary to the intended application of this section.* [Emphasis supplied.]

The respondent's determination is sustained.

Although the issue presented is decided for the Commissioner, and although other determinations of the Commissioner are not contested, it is necessary for the parties to file a Rule 50 computation so that the petitioners may receive some additional deduction. On this point, the record is not clear; neither is the respondent's brief; but respondent has advised the Court that it is proper to have a Rule 50 computation filed.

*Decision will be entered under Rule 50.*